IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WILLIAM MCDERMET,

        Plaintiff,

     vs.

DIRECTV, LLC
THE DIRECTV GROUP, INC.
        Defendant.

C.A. No. 1:19-cv-11322-FDS

**DIRECTV, LLC'S AND THE DIRECTV GROUP, INC.'S MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 2

    A.     The Allegations Of McDermet's Complaint ................................................ 2

    B.     The Relationship Between DIRECTV and the Independent Retailers. ................ 3

    C.     DIRECTV Did Not Control The Independent Retailers' Marketing. ................... 4

    D.     DIRECTV's Communications with McDermet. ................................................ 5

STANDARD ....................................................................................................................... 6

ARGUMENT ...................................................................................................................... 6

    A.     The Independent Retailers Did Not Act As DIRECTV's Agents ......................... 8

        1.     The Independent Retailers Did Not Have Actual Authority To
             Make Any Alleged Telemarketing Calls On Behalf of DIRECTV. .......... 8

            a.     DIRECTV Did Not Control The Manner And Means Of
                The Independent Retailers' Marketing. ......................................... 8

            b.     The Other Factors Used To Assess An Agency
                Relationship Show No Agency Relationship Here. ...................... 10

            c.     The Independent Retailers Were Not Authorized To
                Telemarket. ................................................................................. 12

        2.     The Independent Retailers Did Not Have Apparent Authority to
             Call McDermet Or Place Unsolicited Outbound Telemarketing
             Calls On Behalf of DIRECTV. ................................................................ 13

        3.     DIRECTV Did Not Ratify The Independent Retailers' Actions. ............ 14

    B.     McDermet Cannot Meet His Burden Of Showing He Received Calls From
        An ATDS. ..................................................................................................... 15

        1.     Only Equipment That Has The Capacity For Random Or
             Sequential Number Generation Constitutes an ATDS Under the
             TCPA. ..................................................................................................... 15

         2.     Applying The Rules of Grammar to the Statute's Plain Language
             Shows That Equipment That Only Dials From A List Is Not An
             ATDS. ..................................................................................................... 17

        3.     McDermet Cannot Prove An ATDS Was Used To Call Him. ............... 19

    C.     McDermet's Claim For Violation Of The Massachusetts Consumer
        Protection Act Should Be Dismissed For Failure to Provide The Required
        Notice. .......................................................................................................... 19

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

D.    McDermet's Claim For Violation Of The Massachusetts Consumer Protection Act Should Be Dismissed Because Of A Lack of Injury. .................. 20

E.    The DIRECTV Group Inc. Is Not A Proper Defendant In This Case. ............... 20

CONCLUSION .......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA International v. FCC,*
    885 F.3d 687 (D.C. Cir. 2018) ........................................................................16, 18

*Am. Int'l Grp. Inc. v. Bank of Am. Corp.,*
    712 F. 3d 775 (2d Cir. 2013) ................................................................................18

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ................................................................................................6

*APG Inc. v. MCI Telecommunications Corp.,*
    436 F.3d 294 (1st Cir. 2006) ..............................................................................8, 9

*Artis v. D.C.,*
    138 S. Ct. 594 (2018) ............................................................................................17

*Bingham, Ltd. v. United States,*
    724 F.2d 921 (11th Cir. 1984) ............................................................................18

*Bridgeview Health Care Center, Ltd. v. Clark,*
    816 F.3d 935 (7th Cir. 2016) ..............................................................................13

*Camreta v. Greene,*
    563 U.S. 692 (2011) ..............................................................................................17

*Chemtool Inc. v. Lubrication Techs., Inc.,*
    148 F.3d 742 (7th Cir. 1998) ................................................................................8

*Costos v. Coconut Island Corp.,*
    137 F.3d 46 (1st Cir. 1998) ....................................................................................8

*CSX Transp. Inc., v. Recovery Express Inc.,*
    415 F. Supp. 2d 6 (D. Mass 2006) ......................................................................13

*Cyan, Inc. v. Beaver Cnty Emps. Ret. Fund,*
    138 S. Ct. 1061 (2018) ..........................................................................................18

*Dominguez v. Yahoo Inc!,*
    894 F. 3d 116 (3d Cir. 2018) ........................................................................16, 19

*Duran v. La Boom Disco Inc.,*
    2020 WL 1682773 (2d Cir. Apr. 7, 2020) ..........................................................16

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

*Elliot Coal Mining Co. v. Dir., Office of Workers' Comp. Programs*,
    17 F.3d 616 (3d Cir. 1994)..................................................................................................18

*Fine v. Sovereign Bank*,
    634 F. Supp. 2d 126 (D. Mass 2008) ...................................................................................12

*Gadelhak v. AT&T Services, Inc.*,
    950 F.3d 458 (7th Cir. 2020) ........................................................................................16, 18

*Glasser v. Hilton Vacations Company*,
    948 F.3d 1301 (11th Cir. 2020) ...............................................................................16, 18, 19

*Gonzalez v. Hosopro Corp.*,
    371 F. Supp. 3d 26 (D. Mass 2019) .....................................................................................17

*Helping Hand Caregivers v. Darden Restaurants*,
    2016 WL 7384458 (N.D. Ill. Dec. 21, 2016) .......................................................................13

*Hodgin v. UTC Fire & Security Americas Corp.*,
    885 F.3d 243 (4th Cir. 2018) ........................................................................................14, 15

*Inn Foods Inc. v. Equitable Co-op Bank*,
    45 F.3d 594 (1st Cir. 1995)..................................................................................................14

*Jones v. Royal Admin. Servs., Inc.*,
    866 F.3d 1100 (9th Cir. 2017) ...............................................................................10, 11, 12

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*,
    494 U.S. 827 (1990)..............................................................................................................15

*Keating v. Peterson's Nelnet, LLC*,
    615 Fed. App'x 365 (6th Cir. 2015) .......................................................................................9

*Kern v. VIP Travel Servs.*,
    2017 WL 1905868 (W.D. Mich. May 10, 2017) ...................................................................12

*Keyes v. Ocwen Loan Servicing, LLC*,
    2018 WL 3914707 (E.D. Mich. Aug. 16, 2018).....................................................................19

*Kolstad v. Am. Dental Ass'n*,
    527 U.S. 526 (1999)................................................................................................................7

*Kristensen v. Credit Payment Servs.*,
    879 F.3d 1010 (9th Cir. 2018) ..............................................................................................14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Langfitt v. Fed. Marine Terminals, Inc.*,
  647 F.3d 1116 (11th Cir. 2011) ...............................................................................9

*Leon v. Caterpillar Indus.*,
  69 F.3d 1326 (7th Cir. 1995) ...................................................................................8

*Marks v. Crunch San Diego*,
  904 F. 3d 1041 (9th Cir. 2018) ........................................................................16, 17

*Marya v. Slakey*,
  190 F. Supp. 2d 95 (D. Mass 2001) .........................................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................................................6

*Mey v. Pinnacle Sec., LLC*,
  2012 WL 4009718 (N.D. W.Va. Sept. 12, 2012) ....................................................9

*Meyer v. Holley*,
  537 U.S. 280 (2003) ...............................................................................................12

*Moreau v. James River Otis Inc.*,
  767 F 2d 6 (1st Cir. 1985) ......................................................................................14

*O'Connor v. Nantucket Bank*,
  992 F. Supp. 2d 24 (D. Mass 2014) .......................................................................20

*Pinkus v. Sirius XM Radio, Inc.*,
  319 F. Supp. 3d 938 (N.D. Ill 2018) ......................................................................19

*Rogers v. Postmates*,
  2020 WL 1032153 (N.D. Cal. Mar. 3, 2020) ...........................................................9

*Ross v. Blake*,
  136 S. Ct. 1850 (2016) ...........................................................................................15

*Shaulis v. Nordstrom Inc.*,
  865 F.3d 1 (1st Cir. 2017) ......................................................................................20

*Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*,
  509 F.3d 216 (5th Cir. 2007) .................................................................................18

*Spring v. Geriatric Auth. Of Holyoke*,
  475 N.E. 2d 727 (Mass. 1985) ...............................................................................19

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re The Matter of Joint Petition Filed By Dish Network et al.*,
  28 F.C.C. Rcd. 6574 (2013) ............................................................................................7

*Thomas v. Taco Bell Corp.*,
  879 F. Supp. 2d 1079 (C.D. Cal. 2012) ..........................................................................9

*Thompson-Harbach v. USAA Fed. Savings Bank*,
  359 F. Supp. 3d 606 (N.D. Iowa 2019)..........................................................................19

*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*,
  508 U.S. 439 (1993)........................................................................................................17

**Statutes, Rules and Regulations**

47 C.F.R. § 64.1200(c)(2) ........................................................................................................6

47 U.S.C. § 227(a) ..................................................................................................................16

47 U.S.C. § 227(b) ........................................................................................................ *passim*

47 U.S.C. § 227(c) ...............................................................................................................1, 6

Fed. R. Civ. P. 56(a) .................................................................................................................6

Mass Gen. Law. c. 159C § 3......................................................................................................6

Mass Gen. Laws c. 93A .................................................................................................. *passim*

**Other Authorities**

*The Chicago Manual of Style* § 6.24 (17th ed. 2017) ...............................................................18

RESTATEMENT (SECOND) OF AGENCY § 220(2) (1958) ..........................................................10

RESTATEMENT (THIRD) OF AGENCY § 1.01 .............................................................................8

RESTATEMENT (THIRD) OF AGENCY § 2.03 ...........................................................................13

RESTATEMENT (THIRD) OF AGENCY § 3.01(b) ......................................................................12

RESTATEMENT (THIRD) OF AGENCY § 4.01(b) ......................................................................14

## INTRODUCTION

Consumers like William McDermet ("McDermet")[1] can sue under two sections of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227(b)(3) and 227(c)(5). Section (b)(3) provides a cause of action to enforce, among other things, the statute's prohibition on calls made without the recipient's consent to a cellular telephone number using an automatic telephone dialing system ("ATDS") or a prerecorded voice. 47 U.S.C. § 227(b)(1)(A)(iii). Section (c) provides a cause of action for calls made in violation of the FCC's do-not-call list regulations. *Id.* at § 227(c)(1)-(3). McDermet purports to sue DIRECTV, LLC ("DIRECTV") and its affiliated company, The DIRECTV Group Inc., under both provisions, as well as for purported violations of the Massachusetts state do-not-call list.

Each of these provisions contains a common limitation—lawsuits can only be filed against an entity or individual who "makes" or "initiates" calls. Here, neither Defendant placed the calls alleged in the Complaint, and thus McDermet cannot hold them directly liable.

Instead, Plaintiff seeks to hold Defendants liable solely on the ground that some third-party, non-exclusive, independent retailers authorized to sell DIRECTV services (Rogerio Diaspolicarpo, Whitesign Systems, Nuvision Communications, and AVD Solutions, collectively the "Independent Retailers") interacted with McDermet around the time of some of the alleged calls. But even if these Independent Retailers made the alleged calls and did so in violation of the TCPA, the TCPA (and, by extension, McDermet's tag-a-long state law claims) imposes vicarious liability on DIRECTV only if the Independent Retailers served as DIRECTV's agents while engaging in unlawful telemarketing. The undisputed record establishes that the Independent Retailers were not acting as DIRECTV's agents.

---

[1]    Although Mr. McDermet is an attorney, he has proceeded with this case *pro se.*

1

DIRECTV did not instruct the Independent Retailers to place *any* unsolicited telemarketing calls, much less to call consumers in a manner that violated the TCPA. To the contrary, to the extent the Independent Retailers engaged in the sort of cold-calling alleged by McDermet, they did so in violation of their agreements with DIRECTV. Moreover, the Independent Retailers are paid on commission, not on an hourly basis or on salary. While DIRECTV's contracts with the Independent Retailers placed restrictions on the sort of activities the Independent Retailers could engage in, DIRECTV did not require the Independent Retailers to engage in any particular marketing (much less telemarketing) and DIRECTV did not control the manner and means of the Independent Retailers' work.

Even if his claims did not fail for lack of supporting evidence (and they do), McDermet's case is deficient for other reasons. *First*, other than a handful of calls where recordings produced by McDermet suggest a prerecorded message played, summary judgment must be entered on McDermet's claims arising under Section (b) of the TCPA, because McDermet has no evidence demonstrating what type of equipment the alleged caller used to call him. *Second*, judgment should be entered on McDermet's Massachusetts Consumer Protection Act claim, because he failed to provide required pre-dispute notice and has no evidence of any actual injury. *Finally*, The DIRECTV Group Inc. must be dismissed from the case, because, as a holding company, it does not sell the satellite services that McDermet claims was the subject of the alleged calls.

## STATEMENT OF FACTS

### A.    The Allegations Of McDermet's Complaint.

McDermet alleges he received twenty-eight calls on his cellular telephone number between February 2018 and June 2019. Amended Comp. ¶ 11 (Dkt. 12). He also claims he received twenty-nine calls on his residential telephone line between March 2018 and July 2019. *Id.* at ¶ 12. McDermet further asserts that all of the calls took place while he was on both the Massachusetts

and federal do-not-call lists. *Id.* at ¶ 10. Thirteen of the calls allegedly used a prerecorded voice; the rest did not. *Id.* at ¶ 14. McDermet also claims he continued to receive calls even after he told the callers they were in violation of the do-not-call laws. *Id.* at ¶ 17.

McDermet claims he placed a series of orders using a fake name in response to some of the calls.[2] *Id.* at ¶¶ 20-26. McDermet claims the calls he received on his cell phone violated the TCPA's prohibitions on placing autodialed calls to a cellular telephone number without the recipient's consent, that all the calls violated the do-not-call regulations implementing the TCPA, and that the calls also violated the Massachusetts state law do-not-call regulations, and, by extension, the Massachusetts Consumer Protection Act. *Id.* at ¶¶ 31-40.

**B.    The Relationship Between DIRECTV and the Independent Retailers.**

DIRECTV provides television service to millions of customers across the United States. Haley Decl. ¶ 5.[3] To attract new customers, DIRECTV engages in marketing, including some telemarketing through authorized telemarketers. *Id.* at ¶ 6. DIRECTV checked the lists provided to those authorized telemarketers and found no evidence that the calls McDermet alleges he received came from those authorized telemarketers. Bailey Decl. ¶ 3.

The Independent Retailers are not, and have never been, authorized telemarketers, and DIRECTV never authorized them to do any outbound telemarketing of its services. Haley Decl. ¶¶ 11-13. Nevertheless, DIRECTV's records show that the four Independent Retailers interacted with McDermet during the time period he received the phone calls alleged in the Amended

---

[2]     Certain of these orders are documented in DIRECTV's records. Haley Decl. Ex. A.

[3]     Relevant declarations and other supporting materials are attached as exhibits to the Statement of Facts filed concurrently with this motion.

Complaint—Rogerio Diaspolicarpo, Whitesign Systems, Nuvision Communications, and AVD Solutions.[4] *Id.* at ¶¶ 9-10, Ex. A.

Each retailer has a separate contract with DIRECTV with marketing guidelines incorporated into each agreement.[5] *Id.* at ¶ 12, Exs. B-E. Those contracts state that the agreements with the Independent Retailers "create[] an independent contractor relationship." *Id.* at Exs. B-E, Schedule 1 § 1. The Independent Retailers were prohibited from holding themselves out as DIRECTV and instead were required to use their own names and to disclose that they were only an authorized retailer. *Id.* Among other things, the guidelines also prohibit the Independent Retailers from cold-calling or "placing unsolicited outbound telemarketing calls." *Id.* at §2(D).

## C.     DIRECTV Did Not Control The Independent Retailers' Marketing.

DIRECTV did not oversee the Independent Retailers' operations or supervise them on a day-to-day basis. Salerno Decl. ¶ 9; Loaiza Decl. ¶ 8; Charles Decl. ¶ 8. Instead, the Independent Retailers' own independent management controlled their decision-making. Salerno Decl. ¶¶ 7-9; Loaiza Decl. ¶¶ 7-8; Charles Decl. ¶¶ 7-8. That management hired and fired their own staff and determined the Independent Retailers' respective staffing levels. Salerno Decl. ¶ 10; Loaiza Decl. ¶ 9; Charles Decl. ¶ 9. Each Retailer controlled its own hours and days of operations. Salerno Decl. ¶ 15; Loaiza Decl. ¶ 14; Charles Decl. ¶ 14. The Independent Retailers were paid a commission for each customer subscription sold, but were not paid hourly or via salary paid for their time spent marketing DIRECTV services. Salerno Decl. ¶ 5; Loaiza Decl. ¶ 5; Charles Decl. ¶ 5.

---

[4]     For its work to appear in DIRECTV's records, a customer must take some step towards placing an order—such as conducting a credit check or actually ordering service. Haley Decl. ¶ 9

[5]     The contracts are with AT&T Services Inc., an affiliate of DIRECTV. Haley Decl. Exs. B-E. at p.1

The Independent Retailers—and not DIRECTV—decided their own marketing strategy. Salerno Decl. ¶ 12; Loaiza Decl. ¶ 11; Charles Decl. ¶ 11. DIRECTV did not require the Independent Retailers to distribute any particular marketing material or engage in any specific marketing at all. Salerno Decl. ¶¶ 3, 12; Loaiza Decl. ¶¶ 3,12; Charles Decl. ¶¶ 3, 12. Nor did DIRECTV provide the Independent Retailers with telephone numbers for them to market to or instruct them on specific individuals to market to. DIRECTV does not provide "leads" to independent retailers. Salerno Decl. ¶ 13; Loaiza Decl. ¶ 12; Charles Decl. ¶ 12. Moreover, the Independent Retailers could sell other companies products, not just DIRECTV's services. Salerno Decl. ¶ 6; Loaiza Decl. ¶ 6; Charles Decl. ¶ 6.

**D.     DIRECTV's Communications with McDermet.**

McDermet first sent DIRECTV a demand letter informing it of the alleged telemarketing on February 11, 2019. McDermet Dep. Ex. 12. While that letter alleged TCPA violations, it did not claim that McDermet intended to sue under Chapter 93A of the Massachusetts consumer protection law or specify what injury McDermet suffered. *Id.* In fact, McDermet concedes he never provided DIRECTV with further notice of his intent to sue under that law. McDermet Dep. 89:10-90:8, McDermet Dep. Ex. 12.

In response to McDermet's demand letter, counsel for DIRECTV informed him on March 14, 2019 that DIRECTV had not called him, and that if he was receiving phone calls from independent retailers, DIRECTV had not authorized the calls. McDermet Dep. Ex. 10. DIRECTV's counsel later provided McDermet with the names of the Independent Retailers that its records indicated he interacted with prior to him filing this lawsuit. *Id.* Three of the four Independent Retailers have been terminated by DIRECTV and the fourth has been retained only after terminating a salesman it concluded was responsible for the interactions with McDermet. Haley Decl. ¶ 15.

## STANDARD

Federal Rule of Civil Procedure 56(a) allows a party to move for summary judgment on a claim or defense as long as the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citations and quotations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT

Section 227(b) of the TCPA makes it a violation of the law "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). Further, the FCC's regulations implementing Section 227(c) of the TCPA make it against the law to "initiate any call" to an individual listed on the national do-not-call list. 47 C.F.R. § 64.1200(c)(2). And the Massachusetts state do-not-call law similarly prohibits "making" or "caus[ing] to be made" calls in violation of the applicable do-not-call regulations. Mass Gen. Law. c. 159C § 3.

McDermet admits that he has no evidence showing that DIRECTV "made" or "initiated" calls to either of his numbers (McDermet Dep. 53:18-56:22), and DIRECTV's records also show

its authorized telemarketers made no such calls. Bailey Decl. ¶ 3. McDermet, therefore, cannot hold DIRECTV directly liable for the alleged calls.

That leaves McDermet's bare-bones allegation of agency. Under the TCPA, a party may be held liable under agency principles for calls made by someone else. *In re The Matter of Joint Petition Filed By Dish Network et al.*, 28 F.C.C. Rcd. 6574, ¶ 28 (2013) (the "*Dish Petition*"). This encompasses both formal agency relationships as well as "principles of apparent authority and ratification." *Id.* In interpreting questions of agency, the federal common law generally incorporates the principles of agency found in the Restatement as a beginning point for the analysis. *See Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 542 (1999) ("The common law as codified in the Restatement . . . provides a useful starting point" in assessing agency). As explained below, the undisputed facts show that if any of the Independent Retailers engaged in telemarketing to McDermet, they did not do so as DIRECTV's agents.

McDermet's claims suffer from additional flaws. For most of the alleged calls, McDermet's Section 227(b) claim relies on the allegation that an ATDS was used to call him. But McDermet has no evidence of this.

As for McDermet's claim under the Massachusetts Consumer Protection Act, that claim fails both because McDermet failed to provide the pre-suit notice required by that Act and because McDermet admits he suffered no injury, as required to establish a claim under that Act.

Finally, McDermet's claims against The DIRECTV Group Inc. fail in their entirety because that entity is merely a holding company, and McDermet cannot establish any basis to hold it liable for any conduct alleged in the complaint.

**A.      The Independent Retailers Did Not Act As DIRECTV's Agents.**

**1.      The Independent Retailers Did Not Have Actual Authority To Make Any Alleged Telemarketing Calls On Behalf of DIRECTV.**

**a.      DIRECTV Did Not Control The Manner And Means Of The Independent Retailers' Marketing.**

Formal agency is "the fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control." RESTATEMENT (THIRD) OF AGENCY § 1.01. Formal agency as defined by the Restatement requires showing: (1) consent to the agency by both principal and agent; and (2) control of the agent by the principal. *Costos v. Coconut Island Corp.,* 137 F.3d 46, 48 (1st Cir. 1998) (setting forth Restatement definition); *Marya v. Slakey,* 190 F. Supp. 2d 95, 101 (D. Mass 2001).

DIRECTV and each Retailer entered into a contractual relationship. Haley Decl. ¶ 12. That alone, however, does not indicate an agency relationship, since a discrete beneficial contractual relationship alone is insufficient to show agency. *APG Inc. v. MCI Telecommunications Corp.,* 436 F.3d 294, 301 (1st Cir. 2006); *Chemtool Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998). Moreover, McDermet cannot establish an agency relationship simply by showing that DIRECTV allows the Independent Retailers to sell its services. *See, e.g.*, *Leon v. Caterpillar Indus.*, 69 F.3d 1326, 1336 (7th Cir. 1995) ("Although Calumet is allowed to use [manufacturer] Caterpillar's name and trademark in its advertisements," that "does not render it an agent of Caterpillar, just as every bar which advertises that they sell a particular brand of beer is not the agent of the brewery whose names they advertise.").

Further, the contracts between DIRECTV and the Independent Retailers expressly disavow any intention to create an agency relationship, and state that the Independent Retailers were instead engaged as independent contractors. *Id.* at Exs. B-E, Schedule 1 § 1. While the parties' description

of their relationship may not be dispositive, it does provide evidence that the parties did not intend

for their relationship to be one of agent and principal. *Cf. APG Inc.,* 436 F.3d at 301. Moreover,

under the TCPA, to show formal agency, a plaintiff must show that the alleged principal controlled

"the manner and means of the [solicitation] campaign" at issue. *See, e.g.*, *Langfitt v. Fed. Marine

Terminals, Inc.*, 647 F.3d 1116, 1121 (11th Cir. 2011); *Mey v. Pinnacle Sec., LLC,* 2012 WL

4009718, at *5 (N.D. W.Va. Sept. 12, 2012) (internal quotation and citation omitted); *Keating v.

Peterson's Nelnet, LLC*, 615 Fed. App'x 365 (6th Cir. 2015); *Rogers v. Postmates,* 2020 WL

1032153, at *4-5 (N.D. Cal. Mar. 3, 2020)*. No such control exists here.

For example, a California federal court found (in a decision affirmed by the Ninth Circuit)

that Taco Bell could not be vicariously liable for texts sent at the direction of a Chicago marketing

association of Taco Bell stores, where plaintiff did not present evidence that Taco Bell itself played

any role in controlling or developing the text message campaign. *Thomas v. Taco Bell Corp.*, 879

F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 Fed. App'x 678 (9th Cir. 2014). Similarly, in

*Keating,* the court recognized that to show vicarious liability under the TCPA, a plaintiff must

demonstrate that the alleged principal had the right to control the "manner and means" of the

campaign at issue. 615 Fed. Appx. at 368. The circuit court upheld a grant summary judgment,

finding that the evidence could not support a finding that any defendant authorized the sending of

the text message and the messages were sent without the defendants' knowledge. *Id.* at 372.

DIRECTV likewise did not direct, approve, or encourage *any* alleged telemarketing by the

Independent Retailers, and certainly did not authorize it. Salerno Decl. ¶ 16; Loaiza Decl. ¶ 15;

Charles Decl. ¶ 15; Haley Decl. ¶ 16. Nor did DIRECTV control the means and manner of the

Independent Retailers' marketing campaigns. Salerno Decl. ¶¶ 3, 11-12; Loaiza Decl. ¶¶ 3, 11-12;

Charles Decl. ¶¶ 3, 11-12. Those Independent Retailers (and not DIRECTV) determined their own

strategies for marketing. Salerno Decl. ¶ 12; Loaiza Decl. ¶ 11; Charles Decl. ¶ 11. DIRECTV

does not provide the Independent Retailers with telephone numbers for the Independent Retailers

to call or instruct the Independent Retailers on who specifically to market to. Salerno Decl. ¶ 11;

Loaiza Decl. ¶ 10; Charles Decl. ¶ 10. Because DIRECTV did not control or play any other role

in any telemarketing by the Independent Retailers, it cannot be held vicariously liable.

> **b.** **The Other Factors Used To Assess An Agency Relationship Show No Agency Relationship Here.**

The Second Restatement lists ten factors that may be used in assessing whether a

relationship is one of a principal-and-agent or an independent contractor:

> (a) the extent of control which, by the agreement, the master may exercise
> over the details of the work; (b) whether or not the one employed is engaged
> in a distinct occupation or business; (c) the kind of occupation, with
> reference to whether, in the locality, the work is usually done under the
> direction of the employer or by a specialist without supervision; (d) the skill
> required in the particular occupation; (e) whether the employer or the
> workman supplies the instrumentalities, tools, and the place of work for the
> person doing the work; (f) the length of time for which the person is
> employed; (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relation of master
> and servant; and (j) whether the principal is or is not in business.

RESTATEMENT (SECOND) OF AGENCY § 220(2) (1958). These factors also show there is no agency

relationship between DIRECTV and the Independent Retailers. As described above, DIRECTV

did not direct the Independent Retailers' business or those Independent Retailers' marketing

activities. *See Jones v. Royal Admin. Servs., Inc.*, 866 F.3d 1100, 1106 (9th Cir. 2017) (finding no

agency where, among other things, "Royal did not have the right to control the hours the

telemarketers worked nor did it set quotas for the number of calls or sales the telemarketers had to

make"). The parties also made clear in their contracts that their intent was to form an independent

contractor relationship.

Further, the Independent Retailers are engaged in a distinct business of their own, as downstream sellers of products. The Independent Retailers could have customers whose products they sold other than DIRECTV during the relevant time period. Salerno Decl. ¶ 6; Loaiza Decl. ¶ 6; Charles Decl. ¶ 6. The Independent Retailers' employees are supervised by the own management, who do not answer to DIRECTV. Salerno Decl. ¶¶ 7-9; Loaiza Decl. ¶¶ 7-8; Charles Decl. ¶¶ 7-8. That management designs and implements its own marketing strategy. Salerno Decl. ¶ 12; Loaiza Decl. ¶ 11; Charles Decl. ¶ 11. Moreover, DIRECTV does not supply office space or equipment, or any "leads" to the Independent Retailers for marketing purposes. Salerno Decl. ¶ 14; Loaiza Decl. ¶ 13; Charles Decl. ¶ 13. Nor does DIRECTV pay the Independent Retailers by salary or for their time, or even by the job. Instead, they are paid on commission. Salerno Decl. ¶ 5; Loaiza Decl. ¶ 5; Charles Decl. ¶ 5. *Accord Jones*, 866 F.3d at 1107-08 ("AAAP was paid a commission for each sale, rather than for the time the telemarketers worked. This is a strong indicator that the telemarketers were independent contractors."). Additionally, the contracts allow either the Independent Retailers or DIRECTV to terminate their contract upon 30 days' notice, indicating that the relationship may be terminated at any time. Haley Decl. Exs. B-E at § 9.1. This "designated impermanency" of the relationship supports a finding that the relationship was one of an independent contractor, not an agent. *Jones*, 866 F.3d at 1107.

The Ninth Circuit's decision in *Jones* is instructive as to the interplay of these factors in the TCPA context. There, as here, a company (Royal) hired dealers and vendors to sell contracts for its service. *Id.* at 1103. There, as here, the vendors could sell Royal contracts or other products. *Id.* As here, a vendor (AAAP) was accused of violating the TCPA by engaging in conduct (robocalling) that was forbidden in its contracts. *Id.* at 1103-04. And although Royal had some involvement in AAAP's work (including record-keeping requirements, reporting requirements,

11

security requirements, approval of sales literature, and certain training at a call center), the Court ultimately found that the district court had properly granted summary judgment because AAAP was not acting as Royal's agent. *Id.* at 1108.

### c. The Independent Retailers Were Not Authorized To Telemarket.

While the undisputed facts show that DIRECTV did not control the Independent Retailers' marketing campaigns (and thus the Independent Retailers are not agents of DIRECTV's even when conducting those activities that fall within the bounds of their contracts with DIRECTV), DIRECTV also could not be vicariously liable for any unsolicited outbound telemarketing allegedly involving the Independent Retailers, for the separate reason that any such marketing occurred outside the scope of the Independent Retailers' engagement.

To hold a principal vicariously liable, a plaintiff must show that the principal manifested assent for the agent to act on his or her behalf. *See* RESTATEMENT (THIRD) OF AGENCY § 3.01(b); *Fine v. Sovereign Bank,* 634 F. Supp. 2d 126, 137 (D. Mass 2008) (quoting same). Because assent to act is an essential element of vicarious liability, an agent's ability to bind its principal is limited by the scope of authority delegated to it by the principal. *Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees *in the scope of their authority or employment*") (emphasis added).

DIRECTV did not contract with the Independent Retailers to act as telemarketers. To the contrary, the Independent Retailers contractually promised DIRECTV that they would *not* engage in any unsolicited outbound telemarketing or cold-calling to market DIRECTV services. Haley Decl. Ex. B-E at Schedule 1, §§ 1, 2(D). Thus, to the extent the Independent Retailers engaged in such telemarketing, they acted outside of the limitations bargained for by DIRECTV in the parties' contract and cannot have acted with actual authority. *See Kern v. VIP Travel Servs.*, 2017 WL 1905868, at *6 (W.D. Mich. May 10, 2017) (actual authority could not exist to make calls in

violation of the TCPA when the contract required compliance with applicable laws and a do-not-call policy); *Helping Hand Caregivers v. Darden Restaurants,* 2016 WL 7384458, at *4 (N.D. Ill. Dec. 21, 2016) (in a TCPA case, agent acted outside its authority when it sent fax advertisements after being engaged to send email marketing).

The Seventh Circuit addressed a similar question regarding the scope of an agent's authority in the TCPA context in *Bridgeview Health Care Center, Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016). It found that a principal could not be found vicariously liable for an agent that exceeded its instructions while engaging in telemarketing. *Id.* In *Bridgeview*, the seller instructed the telemarketer to send 100 faxes to businesses within a limited geographic area, but the telemarketer instead sent 4,849 faxes to businesses across three states. *Id.* at 937. The Seventh Circuit determined that faxes sent beyond the original 20-mile radius specified by the seller were not within the scope of the telemarketer's actual authority. *Id.* at 939.

Nor can McDermet argue that telemarketing was implicitly delegated to the Independent Retailers as part of their relationship with DIRECTV. For an agent to act with actual authority, he or she must have a reasonable belief that the principal desired that they act. *CSX Transp. Inc., v. Recovery Express Inc.*, 415 F. Supp. 2d 6, 9-10 (D. Mass 2006). Here, there was no manifestation by DIRECTV that it desired the Independent Retailers to engage in cold-calling or telemarketing, much less to do so using automated equipment or prerecorded messages, or to do so without maintaining internal do-not-call procedures. To the contrary, it is undisputed that such activities were expressly forbidden by DIRECTV's contracts with the Independent Retailers.

> **2.      The Independent Retailers Did Not Have Apparent Authority to Call McDermet Or Place Unsolicited Outbound Telemarketing Calls On Behalf of DIRECTV.**

In addition to the formal authority vested in an agent via an agreement with its principal, a court can also find vicarious liability when an agent acts with apparent authority. RESTATEMENT

(THIRD) OF AGENCY § 2.03. Apparent authority, however, requires spoken words or conduct by the *principal* that would cause a third party to reasonably believe the principal consented to an agency relationship. *Moreau v. James River Otis Inc.*, 767 F 2d 6, 10 (1st Cir. 1985).

Summary judgment is appropriate to the extent Plaintiff's Amended Complaint asserts a claim of apparent authority. McDermet pled no facts suggesting that DIRECTV indicated to him the Independent Retailers were authorized to act as DIRECTV's agent. To the contrary, when he first reached out to DIRECTV about the calls, he was informed they were *not* authorized. McDermet Dep. Ex. 10. McDermet also testified that there is nothing that gave him the impression DIRECTV authorized these Independent Retailers to act on its behalf, other than the calls themselves. McDermet Dep. 55:2-56:11.

### 3. DIRECTV Did Not Ratify The Independent Retailers' Actions.

The undisputed facts also refute any suggestion that DIRECTV ratified any alleged telemarketing done by the Independent Retailers in violation of the TCPA. Ratification requires an "externally observable manifestation of assent" to be bound by the act of the putative agent. RESTATEMENT (THIRD) OF AGENCY § 4.01(b). Ratification can be express or implied, but requires full knowledge of all material facts. *Inn Foods Inc. v. Equitable Co-op Bank,* 45 F.3d 594, 597 (1st Cir. 1995); *Hodgin v. UTC Fire and Security Americas Corp. Inc.,* 885 F.3d 243, 253 (4th Cir. 2018) (finding no ratification when Plaintiff presented no evidence that a potential principal knew a third party was using automated telemarketing to sell its products); *Kristensen v. Credit Payment Servs.,* 879 F.3d 1010, 1015 (9th Cir. 2018) (same).

The record is devoid of any facts under which DIRECTV can be said to have ratified the Independent Retailers' alleged outbound telemarketing. Nothing suggests that DIRECTV was aware of any cold-calling by the Independent Retailers while those calls were occurring, such that it could have ratified the Independent Retailers' alleged telemarketing.

Each DIRECTV sales manager responsible for DIRECTV's relationship with the Independent Retailers has testified that the Independent Retailers were never authorized to conduct any outbound telemarketing on behalf of DIRECTV, and that they did not approve of or encourage any telemarketing. Salerno Decl. ¶16; Loaiza Decl. ¶ 15; Charles Decl. ¶ 15. At no point has DIRECTV approved or encouraged the Independent Retailers to make unsolicited outbound telemarketing calls. Salerno Decl. ¶¶ 11,16; Loaiza Decl. ¶¶ 10, 15; Charles Decl. ¶¶ 10-15. And when DIRECTV became informed of this lawsuit (and the corresponding potential violations of the TCPA), it investigated all potential retailer contacts with McDermet to assess the potential source of the calls. DIRECTV identified four Independent Retailers that had some interaction with McDermet. Three of these have been terminated by DIRECTV, and the fourth (AVD Solutions) represented that it terminated a salesperson it found responsible for contacting McDermet. Haley Decl. ¶ 15. DIRECTV thus repudiated any unauthorized telemarketing and did not ratify it. *Hodgin v. UTC Fire & Security Americas Corp.,* 885 F.3d 243, 252-53 (4th Cir. 2018).

**B.     McDermet Cannot Meet His Burden Of Showing He Received Calls From An ATDS.**

**1.     Only Equipment That Has The Capacity For Random Or Sequential Number Generation Constitutes an ATDS Under the TCPA.**

Even if DIRECTV could somehow be held vicariously liable for the actions of the Independent Retailers (and it cannot), McDermet's claims under Section 227(b) of the TCPA are subject to summary judgment to the extent they concern calls that did not use a prerecorded voice. McDermet admits that only 13 of the calls alleged in the Amended Complaint used a prerecorded voice. Am. Comp. ¶ 14. The remaining calls are not actionable under Section 227(b) unless they were made using an ATDS—and McDermet cannot establish that an ATDS was used.

"Statutory interpretation . . . begins with the text[.]" *Ross v. Blake,* 136 S. Ct. 1850, 1856 (2016); *see also Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835 (1990). The

TCPA does not ban all calls to cellular telephones placed without consent—just calls made using a prerecorded voice or an ATDS. 47 U.S.C. § 227(b)(1)(A)(iii). By statute, an ATDS means equipment that has "the capacity: (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Thus, as the D.C. Circuit put it, "a device constitutes an ATDS if it has the capacity to perform both of two enumerated functions: 'to store or produce telephone numbers, to be called using a random or sequential number generator,' and 'to dial such numbers.'" *ACA International v. FCC,* 885 F.3d 687,701 (D.C. Cir. 2018).

Showing the use of an ATDS is a prima facie element of McDermet's claims regarding the calls that did not use a prerecorded voice, and he bears the burden of establishing that the equipment used to send these alleged calls constitutes an ATDS. But McDermet concedes that he has no evidence whatsoever regarding the equipment used to call him as to the calls alleged in the complaint. McDermet Dep. 56:12-59:8. That alone ought to end the inquiry and allow for judgment to be entered in DIRECTV's favor for all the calls where McDermet's Section 227(b) claim rests upon the alleged use of an ATDS.

Moreover, summary judgment is appropriate because McDermet has no evidence to show whether the calls were made using equipment that "us[ed] a random or sequential number generator" as opposed to dialing from preset lists. The circuits have split as to whether dialing automatically from a list of preset numbers constitutes the use of an ATDS. *Compare Gadelhak v. AT&T Services, Inc.,* 950 F.3d 458 (7th Cir. 2020); *Glasser v. Hilton Vacations Company,* 948 F.3d 1301 (11th Cir. 2020); *Dominguez v. Yahoo Inc!,* 894 F. 3d 116, 199 (3d Cir. 2018) *with Marks v. Crunch San Diego,* 904 F. 3d 1041 (9th Cir. 2018); *Duran v. La Boom Disco Inc.,* 2020 WL 1682773 (2d Cir. Apr. 7, 2020). An analysis of the statute and the relevant opinions, however,

shows that Seventh and Eleventh circuits have the better of the argument and that list-based dialing is not subject to liability under 47 U.S.C. § 227(b)(1)(A)(iii).[6]

### 2. Applying The Rules of Grammar to the Statute's Plain Language Shows That Equipment That Only Dials From A List Is Not An ATDS.

In determining the meaning of a provision, we "look first to its language, giving the words used their ordinary meaning." *Artis v. D.C.,* 138 S. Ct. 594, 603 (2018). Here, the statutory language, informed by the rules of punctuation and grammar, permits only one interpretation.

In assessing what the statutory language means in the context of the definition of an ATDS, punctuation matters. The Supreme Court has explained that a statute's meaning "will typically heed the commands of its punctuation." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.,* 508 U.S. 439, 454 (1993). The key statutory passage here has a parallel structure: two linked verbs ("store *or* produce") that share a common object ("numbers to be called"), and a dependent modifier ("using a random or sequential number generator") that is set off by a comma. The phrase "using a random or sequential number generator" then, is an essential element of any machine that

---

[6]     DIRECTV recognizes the Court has previously considered this question in an unrelated case and elected at that time to follow the *Marks* decision. *Gonzalez v. Hosopro Corp.,* 371 F. Supp. 3d 26, 34 (D. Mass 2019). However, the Court also noted that the statutory language was "unusually confusing." *Id.* The Court now has the benefit of reviewing the reasoning of additional circuit courts (although none bind the Court) and DIRECTV respectfully requests that it reconsider its earlier decision. *Camreta v. Greene,* 563 U.S. 692, 709 n. 7 (2011) ("[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). DIRECTV also notes that this case comes to the Court on a very different procedural posture than was applicable to its decision in *Gonzalez.* There, the Court considered a motion to dismiss. Here, McDermet had the full opportunity to conduct discovery and nevertheless admittedly has no evidence about the equipment used to place the calls—including evidence that would show to what extent the equipment was automated. The Court thus need not reconsider its decision in *Gonzalez* to grant summary judgment on McDermet's claim because McDermet has not disclosed evidence that would allow a factfinder that conclude he met his burden under *any* conceivable interpretation of the statutory definition of an ATDS.

a plaintiff seeks to classify as an ATDS, and equipment that can only call numbers generated from another source (for example, a list of customers) is not covered by the statute.

Ordinary principles of style and usage confirm this point. "When a dependent clause precedes the main, independent clause, it should be followed by a comma." *The Chicago Manual of Style* § 6.24 (17th ed. 2017). The phrase "to store or produce telephone numbers to be called" is dependent on the clause "using a random or sequential number generator," and the term "using a random or sequential number generator" thus modifies both statutory verbs—to store and to produce. *Gadelhak,* 950 F.3d at 464-65; *Glasser,* 948 F.3d at 1307.

These principles of grammar align with well-established rules of statutory interpretation. The Supreme Court has explained that, when interpreting modifiers set off by commas, "the most natural way to view the modifier is as applying to the entire preceding clause." *Cyan, Inc. v. Beaver Cnty Emps. Ret. Fund,* 138 S. Ct. 1061, 1077 (2018). Numerous courts of appeals similarly recognize that the "use of a comma to set off a modifying phrase from other clauses indicates that the qualifying language is to be applied to ***all*** of the previous phrases, *and not merely the immediately preceding phrase.*" *Elliot Coal Mining Co. v. Dir., Office of Workers' Comp. Programs,* 17 F.3d 616, 630 (3d Cir. 1994) (emphasis added); *accord Bingham, Ltd. v. United States,* 724 F.2d 921, 925-26 n.3 (11th Cir. 1984) (same); *see also, e.g., Am. Int'l Grp. Inc. v. Bank of Am. Corp.,* 712 F. 3d 775, 782 (2d Cir. 2013) ("When a comma is included . . . the modifier is generally understood to apply to the entire series."); *Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.,* 509 F.3d 216, 223 (5th Cir. 2007) (when "there is a serial list followed by modifying language that is set off from the last item in the list by a comma, this suggests that the modification applies to the whole list and not only the last item.").

Thus, in a series of decisions interpreting the TCPA's ATDS definition following the D.C. Circuit's decision in *ACA International,* a number of courts have held that systems with only the capacity to dial numbers from clists do not fall within the ATDS definition. *See, e.g., Gadelhak,* 950 F.3d at 464-65; *Glasser,* 948 F.3d at 1307; *Dominguez,* 894 F.3d at 121 ("those messages were sent precisely because the prior owner of Dominguez's telephone number had affirmatively opted to receive them, not because of random number generation"); *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 938, 939 (N.D. Ill 2018); *Keyes v. Ocwen Loan Servicing, LLC,* 2018 WL 3914707, at *8 (E.D. Mich. Aug. 16, 2018); *Thompson-Harbach v. USAA Fed. Savings Bank,* 359 F. Supp. 3d 606, 624 (N.D. Iowa 2019). The Court should reach the same conclusion here.

### 3.      McDermet Cannot Prove An ATDS Was Used To Call Him.

As described above, McDermet has no evidence regarding the level of automation (if any) involved in the equipment used to call him, and thus cannot meet his burden under any interpretation of what constitutes an ATDS. But to the extent the Court assumes that McDermet received calls because he was on some automated calling list,[7] he still would not have received calls made using an ATDS.

### C.    McDermet's Claim For Violation Of The Massachusetts Consumer Protection Act Should Be Dismissed For Failure to Provide The Required Notice.

McDermet also seeks to recover under the Massachusetts Consumer Protection Act.  Mass Gen. Laws c. 93A.[8] But that law requires a potential claimant to provide notice of his intent to file a claim under the law prior to filing a lawsuit. Mass. Gen. Laws c. 93A § 9(3). McDermet's demand letter to DIRECTV gave no indication that he intended to sue under the Consumer Protection Act

---

[7]      The fact that McDermet received multiple calls strongly suggests that his number was not dialed randomly or sequentially.

[8]      The claim is derivative and based on his do-not-call claims, and thus should also be dismissed for all of the reasons discussed above.

or described any injury that he suffered because of the calls; and McDermet admits that he never provided pre-suit notice of his intent to file a Chapter 93A claim. McDermet Dep. Ex. 12; McDermet Dep. 89:2-90:8; *see also Spring v. Geriatric Auth. Of Holyoke,* 475 N.E. 2d 727, 735-36 (Mass.  1985). McDermet thus failed to comply with the procedural requirements necessary to allege a consumer claim under ch. 93A, §9, and that claim should be dismissed. *O'Connor v. Nantucket Bank,* 992 F. Supp. 2d 24, 38 (D. Mass 2014).

**D.      McDermet's Claim For Violation Of The Massachusetts Consumer Protection Act Should Be Dismissed Because Of A Lack of Injury.**

The ch. 93A claim also is defective because McDermet has no evidence of injury associated with the alleged telemarketing. Showing an "identifiable harm" is an essential element of McDermet's Chapter 93A claim. *Shaulis v. Nordstrom Inc.*, 865 F.3d 1, 10 (1st Cir. 2017). McDermet, however, admitted in his discovery responses that he suffered no tangible injury as a result of the calls, and thus judgment for DIRECTV is appropriate. Plaintiff's Interrogatory Resp. No. 7, *see also* McDermet Dep. 35-36.

**E.      The DIRECTV Group Inc. Is Not A Proper Defendant In This Case.**

McDermet continues to pursue his claims against both DIRECTV and The DIRECTV Group Inc. The DIRECTV Group Inc., however, acts as a holding company in the chain of ownership between DIRECTV and its parent, AT&T Inc. Phillips Decl. ¶ 4. DIRECTV is the company that provides the television services to consumers that McDermet claims he received telemarketing calls about. *Id.* at ¶ 3. To the extent McDermet has a viable claim against any company (and he does not), it is DIRECTV, and The DIRECTV Group Inc. should be dismissed.

<u>**CONCLUSION**</u>

For the reasons explained above, the Court should grant summary judgment in Defendants' favor on all of McDermet's claims.

Dated this 27th day of April, 2020

DEFENDANTS, by their attorneys

/s/ Kyle J. Steinmetz

Steven M. Cowley BBO # 55434
Gina M. Puls BBO # 697122
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
Tel: 857-488-4261
Fax: 857-401-3090
smcowley@duanemorris.com
gmplus@duanemorris.com


Kyle J. Steinmetz, *admitted pro hac vice*
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
Tel: 312-701-8547
ksteinmetz@mayerbrown.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Kyle J. Steinmetz, an attorney admitted *pro hac vice* in this matter, do hereby certify

that on April 27, 2020, I caused a copy of the following to be served via the ECF system upon:

William W. McDermet IV
4 Second Street
Ipswich, MA 01938-2128
Xebec2718@gmail.com

/s/ Kyle J. Steinmetz
_____